UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| JIAXING GLOBALLION IMPORT & EXPORT CO., LTD., itself and as assignee of SHANGHAI MAOJI IMPORT & EXPORT CORPORATION LIMITED, and JIAN FENG LIU, individually and/or derivatively on behalf of Argington, Inc., <br><br> Plaintiffs, <br><br> -against- <br><br> ARGINGTON, INC., ANDREW F. THORNTON, and JENNIFER L. ARGIE a/k/a JENNIFER L. THORNTON, <br><br> Defendants. | MEMORANDUM & ORDER <br><br> 11-CV-6291 <br><br> FILED <br> IN CLERK'S OFFICE <br> U.S. DISTRICT COURT E.D.N.Y. <br><br> ★ APR 0 5 2012 ★ <br><br> BROOKLYN OFFICE |

**JACK B. WEINSTEIN, Senior United States District Judge:**

I. **Introduction**

Plaintiffs sue Argington, Inc. ("Argington") and its owners and shareholders, Andrew F. Thornton and Jennifer L. Argie (the "Individual Defendants"), for failure to pay on a contract. *See* Compl., Doc. Entry 1, Dec. 23, 2011 ("Compl."). The individual defendants move to dismiss the claims against them, arguing that plaintiffs have failed to plead sufficient facts to pierce the corporate veil and hold them liable for the acts of Argington, Inc.

For the reasons set forth below, the motion is denied.

II. **Facts**

Plaintiff Jianxing Globallion Import & Export Co., Ltd. ("JG") and Shanghai Maoji Import & Export Corporation Limited ("SM") are Chinese corporations with their principle place

1



of business in China. Compl. ¶¶ 3-4. Liu, a Chinese citizen, is the president, general manager, and controlling shareholder of JG. *Id.* ¶¶ 5-6.

Defendant Argington is a Missouri corporation with an office address in Kansas City, Missouri that distributes children's furniture and children's furniture parts. *Id.* ¶¶ 7, 13. Plaintiffs contend, however, that it maintains its principle place of business in Brooklyn, New York, and conducted its business transactions here. *Id.* ¶ 8. The corporation has never obtained authorization by the Secretary of State to do business in New York. *Id.* ¶ 40.

The Individual Defendants are natural persons who reside in Brooklyn, New York. *Id.* ¶¶ 9-10.

In 2008, Argington contacted JG to supply its needs for these products. *Id.* ¶ 14. The parties agreed that JG was to be paid within thirty days of the estimated time of arrival of the goods in the U.S. *Id.* ¶ 15. Between April 2009 and August 2011, plaintiff JG manufactured and delivered to Argington a total of twenty-eight shipments of children's furniture and children's furniture parts for a total contract price of $898,240.78." *Id.* ¶ 12. Argington paid a total of $377,392.93, and refused to pay a balance of $520,847.85. *Id.* ¶¶ 17-18.

Argington continued to issue purchase orders to JG, which JG was unable to fulfill due to quota restrictions. *Id.* ¶ 19. At Argington's request, JG processed these orders and forwarded them to SM for shipment and delivery, since SM had the proper permits to do so. *Id.* Between May 2009 and November 2011, JG manufactured and delivered to Argington through SM a total of twenty-three shipments for a total contract price of $413,882.43. *Id.* ¶ 12. Argington paid a total of $334,285.08, but refused to pay the balance of $79,597.35. *Id.* SM assigned all its claims against Argington, Inc. to JG. *Id.* ¶ 20.

JG also lost $19,597.45 in 2010 in the form of a lost tax rebate from Chinese authorities as a result of Argington's failure to pay. *Id.* ¶ 24. It expects to lose an additional tax rebate in 2011, although the amount of the loss is not yet clear. *Id.* ¶ 25. Argington is aware of this loss. *Id.* ¶ 26.

After JG suspended its shipments to Argington and demanded that that company pay its outstanding balance, Argington, through the Individual Defendants, offered to transfer thirty percent of the common stock in the company and thirty percent of its profits to Liu in exchange for an extension of time for Argington to pay its balances and the resumption of shipments. *Id.* ¶ 29. The stock was transferred on September 17, 2010. *Id.* ¶ 30. At the hearing on the instant motion, plaintiffs' attorney produced the stock certificates from the transfer. *See* Tr. of Hr'g, Apr. 2, 2012. These certificates are deemed attached as Exhibit A.

The parties agreed that new shipments would be paid three months FOB Shanghai, and JG resumed shipments. Compl. ¶¶ 31-32.

The Individual Defendants never permitted Liu to fully participate as a shareholder. They refused to produce income and expense statements, *id.* ¶ 33; refused to make any dividend payments to him, *id.* ¶ 35; and refused to send him any notices of shareholders' meetings, *id.* ¶ 36.

JG again suspended its shipments. *Id.* ¶ 37. The Individual Defendants then offered to form a joint venture corporation in which Argington and Liu would have equal control. *Id.* ¶ 38. They later reneged on this promise. *Id.* ¶ 39.

In support of their attempt to pierce the corporate veil and hold the Individual Defendants liable, plaintiffs allege:

> 50. Thornton and Argie exercised their sole control and dominion over Argington to engage in unjust and wrongful conduct against plaintiff JG.

3

> 51. Thornton and Argie failed to adhere to the formalities of corporate existence of Argington in that it failed to keep adequate records relating to the governance of its corporate affairs and accounting of its finances.
> 52. Argington was not adequately capitalized to engage in the business for which it was formed and was undercapitalized with the intent of avoiding obligations as a result of its ordinary business operations.
>
> 53. Thornton and Argie commingled their personal funds with Argington's funds, stripped Argington of its assets for their personal use, caused Argington to become a "shell" corporation, and used the "shell" corporation as a vehicle to facilitate their wrongful and unjust acts against JG while avoiding their personal liability.

*Id.* ¶¶ 50-53. To bolster their claim, plaintiffs note that, from the limited financial records available, it appears that Argington's gross receipts were $1,898,015.38, and that the cost of goods it purchased was approximately 50%. *Id.* ¶ 34. Plaintiffs claim that the remaining $900,000 disappeared into the pockets of the Individual Defendants. Pls.' Mem. of L. in Opp. to Defs.' Mot. to Dismiss, Doc. Entry 16, Mar. 16, 2012.

### III. Motion to Dismiss Standard

Rule 12(b)(6) allows dismissal of claims when the pleadings fail "to state a claim upon which relief can be granted." While plaintiffs are not required to put forward "detailed factual allegations," a pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2006). In ruling on a 12(b)(6) motion, a court must accept all factual allegations in the complaint as true and draw all reasonable inferences in plaintiff's favor. *Hayden v. Paterson*, 594 F.3d 150, 160 (2d Cir. 2010). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes*, 416 U.S. 232,

236 (1974). A claim thus survives a motion to dismiss if it is "plausible on its face." *Twombly*, 550 U.S. at 570.

## IV. Choice of Law

A federal court sitting in diversity applies the choice-of-law rules of the state in which it sits. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941); *Fieger v. Pitney Bowes Credit Corp.*, 251 F.3d 386, 393 (2d Cir. 2001). In New York, the "first step in any case presenting a . . . choice of law issue is to determine whether there is an actual conflict between the laws of the jurisdictions involved." *In re Allstate Ins. Co.*, 613 N.E.2d 936, 938 (N.Y. 1993). Assuming that an actual conflict exists between the laws of jurisdictions with interests in having their law applied to the case, New York's choice-of-law doctrine dictates that "the law of the state of incorporation determines when the corporate form will be disregarded," *Fletcher v. Atex, Inc.*, 68 F.3d 1451, 1456 (2d Cir. 1995), as "the state of incorporation has the greater interest in determining when and if that insulation is to be stripped away," *Kalb, Voorhis & Co. v. Am. Fin. Corp.*, 8 F.3d 130, 132 (2d Cir.1993).

Both parties concede that Missouri law applies to piercing. *See, e.g.*, Tr. of Hr'g, Apr. 2, 2012.

## V. Plaintiffs' Have Sufficiently Pled Cause of Action Against Individual Defendants

An attempt to pierce the corporate veil is "a separate and distinct cause of action" under Missouri law. *Irwin v. Bertelsmeyer*, 730 S.W.2d 302, 304 (Mo.App. E.D. 1987). That state recognizes "narrow circumstances in which the 'corporate veil' can be 'pierced' in order to hold the corporation's owners liable for its debt." *66, Inc. v. Crestwood Commons Redevelopment Corp.*, 998 S.W.2d 32, 40 (Mo. 1999). Plaintiffs must show:

5

(1) Control, not mere majority or complete stock control, but complete domination, not only of finances, but of policy and business practice in respect to the transaction attacked so that the corporate entity as to this transaction had at the time no separate mind, will or existence of its own; and

(2) Such control must have been used by the defendant to commit fraud or wrong, to perpetrate the violation of a statutory or other positive legal duty, or dishonest and unjust act in contravention of plaintiff's legal rights; and

(3) The aforesaid control and breach of duty must proximately cause the injury or unjust loss complained of.

*Id.*; *see also Collet v. American National Stores, Inc.*, 708 S.W.2d 273, 284 (Mo. App. 1986). An allegation of actual fraud is not necessary for a court to hold shareholders liable for corporate debts; the violation of statutory duties and undercapitalization are sufficient justification to pierce the corporate veil. *66, Inc.*, 998 S.W.2d at 41; *see also May Department Stores Co. v. Union Electric Light & Power Co.*, 107 S.W.2d 41, 55 (1937) (finding an improper purpose in a case where a corporation was "operating it without sufficient funds to meet obligations to those who must deal with it"). Undercapitalization is usually measured from the date of incorporation. *66, Inc.*, 998 S.W.2d at 41.

In determining whether individual defendants exercised sufficient control over the corporation to justify piercing the veil, courts have looked at whether they are "sole officers, directors and shareholders" of the corporation; whether they "made all corporate decisions and controlled all corporate activities;" and whether the property from which the corporation operate was owned by the individual defendants. *See Edward D. Gevers Heating & Air Conditioning Co. v. R. Webbe Corp.*, 885 S.W.2d 771, 774 (Mo. App. 1994) (relying on these allegations in denying defendants' motion to dismiss); *see also McCormick v. Cupp*, 106 S.W.3d 563, 568 (Mo. App. 2003) ("As only a half-owner of [the company], a non-majority shareholder, [defendant] did not dominate (nay, could not have dominated) [the company]. Corporate

6

domination by the defendant is necessary to pierce the corporate veil."); *Saidawi v. Giovanni's Little Place, Inc.*, 987 S.W.2d 501, 505 (Mo. App. 1999) (holding plaintiff alleged sufficient facts to state a claim for piercing the corporate veil where complaint alleged that the individual defendant "was the majority stockholder as well as the treasurer and director of Defendant Restaurant; that he treated it as his personal business without regard for the corporate form; that he made all decisions as to the day-to-day operations of Defendant Restaurant; that he advanced money personally to Defendant Restaurant and totally dominated and controlled it to the extent that he became the alter ego of the corporation; that [the individual defendant] failed to adequately capitalize the corporation; and that he used the corporate cloak of protection as a subterfuge for the perpetration of fraud on Plaintiff").

Plaintiffs have pled sufficient facts to state a claim for piercing the corporate veil.

Facts alleged indicate that the Individual Defendants completely dominated Argington. The Individual Defendants operate Argington out of a Brooklyn, New York address which appears to be the Individual Defendants' residence. Prior to the sale of shares to Liu, defendants were the sole owners and shareholders of the corporation. Even after the sale of shares, defendants failed to accord Liu the rights of a shareholder. Argington's course of conduct with Liu—namely, its failure to turn over records or inform him of shareholder meetings—indicates that the company is not complying with corporate formalities. Plaintiffs further claim that the Individual Defendants comingled their personal funds with Argington's funds and undercapitalized the business.

Plaintiffs allege that defendants took these actions "with the intent of avoiding obligations as a result of its ordinary business operations" and "to facilitate their wrongful and unjust acts against JG while avoiding their personal liability." Compl. ¶¶ 67-68. These

7

allegations are sufficient to plead the requisite harm to them, and that the Individual Defendants' conduct proximately caused that harm.

Defendants complain that plaintiffs have failed to adduce any evidence to support their claims. *See* Defs. Jennifer L. Argie and Andrew F. Thornton's Mem. in Supp. of Mot. to Dismiss the Compl. Against the Individual Defs., Doc. Entry 12, Mar. 2, 2012; Defs. Jennifer L. Argie and Andrew F. Thornton's Reply Mem. in Supp. of Mot. to Dismiss the Compl. Against the Individual Defs., Doc. Entry 22, Mar. 30, 2012. They argue that plaintiffs in other cases alleging similar claims have alleged more facts in support of their claim. *See* Tr. of Hr'g, Apr. 2, 2012 (citing *Osgood v. Midwest Parking Solutions*, 4:07 CV 1365, 2009 WL 4825192 (E.D. Mo. Dec. 11, 2009)).

Unlike the plaintiffs in *Osgood*, however, plaintiffs in this case are not employees of the corporation and have no insider knowledge of its internal workings. Given their limited understanding of the actual operations of Argington, their allegations are sufficient to permit discovery on this claim. *See, e.g., Osgood v. Midwest Parking Solutions*, 4:07 CV 1365, 2009 WL 4825192, at *2-4 (E.D. Mo. Dec. 11, 2009) (holding that allegations that an individual defendant co-mingled corporate assets with personal assets; undercapitalized the corporation; and "had operational control," "an ownership interest in," and "controlled all significant operations of" the corporation had pled sufficient facts to survive a motion to dismiss).

### VI. Conclusion

Defendants' motion is denied. The magistrate judge is respectfully requested to expedite discovery. At the parties' request, the magistrate judge shall arrange for mediation.

A trial date shall be set by the magistrate judge in consultation with Courtroom Deputy June Lowe. The magistrate judge shall, with consent of the parties, select a civil jury of twelve.

All *in limine* motions shall be heard on a date selected by the magistrate judge. The parties shall file proposed jury charges, together with any appropriate supporting briefs, and exchange: (1) updated lists of pre-marked documents proposed for use at trial, together with copies of all documents; (2) updated lists of potential witnesses, together with summaries of proposed testimony; and (3) stipulations with respect to all undisputed facts. Copies shall be simultaneously filed and docketed.

SO ORDERED.

Jack B. Weinstein
Senior United States District Judge

Dated: April 2, 2012
       Brooklyn, New York

# EXHIBIT A



# CERTIFICATE

**300**

United States

Authorizing three hundred

ISSUED TO

Liu Jiao Feng

DATED 04/17/2010

---

For Value Received, I hereby sell, assign and transfer unto **Liu Jiao Feng** **three hundred** Shares of the Capital Stock represented by the within Certificate, and do hereby irrevocably constitute and appoint **Andrew F. Thornton** to transfer the said Stock on the books of the within named Corporation with full power of substitution in the premises.

Dated Sep 17, 2010

In presence of

# Agreement

1. Old order balance more than $30,000, must pay before 17th, Nov.

2. POJJ3 had shipped, ETD is 25th, Oct; ETA is 13th, Nov. Payment term is ETA 30 days, due day is on 15th, Dec.

3. POJJ4 is producing now, ETD is 15th, Dec; ETA is 1st, Jan. Payment term is ETA 30 days, due day is on 1st, Feb.

4. POJJ5 must give order schedule on 25th, Nov, ETD is 1st, Feb; ETA is 15th, Feb; If payment term keeps ETA 30 days, then Argington must send $80,000 of POJJ3 before 25th, Nov, balance of POJJ3($70,000) pay before 15th, Dec.

5. All stocks in Jiahe will delivery out in four months from November, payment term is ETA 30 days.

6. After payment of stock finish, Jiahe give the max payment amount to Argington is $300,000, then payment term keeps ETA 30 days.
   If total amount pass $300,000, payment term will change to 50% deposit in advance, 50% pay before Telex Release.

7. Argingtion will give new order schedule of POJJ6 on 15th, Jan. ETD is around 25th, March.

8. Jiahe is the exclusive producer for the following products:
   Sw1500, sw1600, sw1700, sw1502, sw1503
   Bam2300, bam2301, bam2302, bam2303, bam2304, bam2305, bam2400, bam2401, bam2402, bam2500, bam2600.

   In additional, Jiahe is the first choice to develop new other items in future.

Buyer: ANDREW F. THORNTON
2009-10-27

Seller:
2009-10-27   2009.10.27